UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| KURT GLICK, | * | |
| | * | |
| Plaintiff | * | |
| | * | NO. ____________________ |
| v. | * | |
| | * | JURY DEMAND |
| CITY OF TULLAHOMA, TENNESSEE, | * | |
| | * | |
| Defendant | * | |

**COMPLAINT**

Comes Plaintiff and sues Defendant for damages in the amount of $500,000.00. Plaintiff would show unto the Court as follows:

**I. JURISDICTION**

1. The jurisdiction of this Court is invoked by Plaintiff pursuant to T.C.A. §4-21-311, *et seq*. and 29 U.S.C. §626, *et seq*. to secure protection and redress for the deprivation of rights guaranteed by the Tennessee Human Rights Act (THRA) and the Age Discrimination in Employment Act, as amended (ADEA), providing for injunctive and other relief against retaliation and age discrimination in employment.

**II. NATURE OF PROCEEDING**

2. This is a proceeding for back pay and benefits due Plaintiff; for injunctive relief requiring Defendant's re-employment of Plaintiff at his former position or front pay in lieu of reinstatement; for compensatory damages; liquidated damages, costs, prejudgment interest and attorney fees; and for such additional damages as may be necessary to effectuate the purposes of THRA and ADEA.

## III. THE PARTIES

3. At all times material, Plaintiff was a 59-year-old resident of Tullahoma, Tennessee.

4. At all times material, Plaintiff was employed by Defendant in Tullahoma, Coffee County, Tennessee.

5. Defendant is a Tennessee municipality with its principal place of business in Tullahoma, Coffee County, Tennessee.

6. The matters giving rise to this suit occurred in Tullahoma, Coffee County, Tennessee. This Honorable Court has jurisdiction and venue over the parties and the subject matter of this lawsuit pursuant to T.C.A. §4-21-311, *et seq*. and ADEA.

## IV. FACTUAL BASIS OF PLAINTIFF'S CLAIMS

7. Plaintiff worked for Defendant in the Parks and Recreation Department for 35 years.

8. During the last 20 years of his employment, Plaintiff held the position of Parks and Recreation Director.

9. As the Parks and Recreation Director, Plaintiff had approximately 23 employees working under him.

10. In Fall 2020, the position of Athletic Coordinator came open. The program manager, Lyle Russell, chose several candidates including a white male over the age of 40 years old, a female, and an African American male to be interviewed. Plaintiff approved of all of the candidates for interview.

11. Shortly after Plaintiff submitted the list to Human Resources, he was called into a meeting with the HR Director, Casta Brice, and told that the white, male would not be interviewed.

When Plaintiff objected, he was called into another meeting with Ms. Brice and the City Administrator, Jennifer Moody.

12. Plaintiff was told at the meeting with Ms. Brice and Ms. Moody that they wanted to interview only the female and the African American candidates. Ms. Moody told Plaintiff that "we are not going to hire another over 40 white male." Ms. Moody made additional age-related statements about older men.

13. The result of the meeting was that Defendant would not hire anyone at that time for the Athletic Coordinator position.

14. However, on November 30, 2020, after the controversial discussion concerning the Athletic Coordinator position and the hiring of males over the age of 40, Plaintiff was called in to the office of Ms. Moody.

15. Ms. Moody told Plaintiff, "You are going to be shocked. I am putting you on paid administrative leave pending an investigation." When Plaintiff asked what the investigation was about, Ms. Moody said, "I can't say." Despite Plaintiff's repeated questions, the reason for his leave was not revealed.

16. At the time that Plaintiff was told that he was going to be placed on leave, Plaintiff was also told to stay away from all employees and to not talk to anyone about the investigation.

17. On December 2, 2020, Plaintiff was interviewed for over 4 hours by a group of attorneys representing Defendant.

18. Plaintiff was contacted by Ms. Moody on December 4, 2020 and told not to come back to work until she had the full report from the investigators. This puzzled Plaintiff because he had answered the questions thoroughly and thought the interview went well.

19. Despite being told that the investigation was internal, Plaintiff began to hear comments made about the investigation. For example, one family with whom Plaintiff is close friends told Plaintiff that one of Defendant's aldermen said that Plaintiff was being investigator because he was stealing from Defendant. This untrue comment was extremely embarrassing to Plaintiff.

20. On December 29, 2020, a hearing was held at which Plaintiff was given a paper which listed the charges against him. This was the first time that Plaintiff knew what charges had been alleged against him. Neither Plaintiff nor his attorney was allowed to speak in order to refute the charges.

21. Plaintiff was told that he could return to meet with Ms. Moody and Ms. Brice on January 13, 2021.

22. At the January 13, 2021, meeting, Ms. Moody and Ms. Brice gave Plaintiff a letter of their findings against Plaintiff. Ms. Moody made the statement to some of the employees that Plaintiff was coming back to work because the investigation did not go the way she had hoped. Ms. Brice commented that she did not get what she wanted (meaning Plaintiff was not terminated).

23. On January 14, 2021, Plaintiff was finally allowed to return to work. However, upon his return, Ms. Moody insisted that she would have Plaintiff's first meeting with staff. When Ms. Moody met with the staff and Plaintiff, she did everything possible to embarrass Plaintiff to force him to quit. All of the charges against Plaintiff were read to the staff. Plaintiff was told that he had to explain himself to the staff even though he had not done anything wrong. The charges were presented as a proven fact, and Plaintiff was extremely humiliated and embarrassed by the false allegations.

24. Also, when Plaintiff was going to be put back to work, he was told that he would be suspended for 5 days and be put on a Performance Improvement Plan for 6 months. Plaintiff knew that he was not going to be allowed to make it through the Performance Improvement Plan because Ms. Moody's previous statements about how she would get rid of an employee by using the PIP. Plaintiff had seen her do that before. This action was taking place because the City Administrator was determined to terminate Plaintiff and replace him with a female and/or someone younger.

25. Plaintiff was allowed 10 days following his return to work to appeal the charges brought against him. Plaintiff made the appeal, but Ms. Moody was allowed to speak to the alderman and Mayor without Plaintiff present. Plaintiff's appeal was denied without Plaintiff ever being allowed to speak on his own behalf!

26. Plaintiff was forced to retire on May 7, 2021, in order to retain his health insurance through Defendant. If Plaintiff had stayed with Defendant and allowed Defendant to terminated him as had been intended, he would have lost his health benefits.

27. When Plaintiff told Ms. Moody that he would retire, she began her "search" for his replacement. Ms. Moody wanted to hire a young female, but she learned that there would be opposition to her hiring choice. A male in his 40s was thereafter slated to be hired, but he withdrew his name from consideration.

28. In the year before Plaintiff's forced retirement, other older male department directors were terminated or forced to resign.

29. Plaintiff was constructively discharged due to his age and in retaliation for opposing discrimination.

## V. PLAINTIFF'S CLAIMS

30. Defendant discriminated and retaliated against Plaintiff by investigating him, placing him on suspension and ultimately constructively discharging him because of his age in violation of T.C.A. §4-21-401, *et seq.* and 29 U.S.C. §623, *et seq.*

31. Defendant is responsible for the acts of its supervisory employees.

## VI. JURISDICTIONAL PREREQUISITE

32. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, 494-2021-02352. Plaintiff has received his Right to Sue, which is attached.

## VII. DAMAGES

33. As a result of the wrongful action of Defendant in constructively discharging Plaintiff, Plaintiff has suffered both financially and emotionally. In particular, Plaintiff lost and will continue to lose salary, opportunities and advancement, and various employee benefits, which he would have earned had he been allowed to continue in his position and employment with Defendant. In addition to the actual and financial loss Plaintiff has sustained, he has suffered great mental anguish resulting from the embarrassment and humiliation that he experienced because of Defendant's actions.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That service be issued and properly served upon Defendant and Defendant be required to answer within the time prescribed by law;

b. That upon the hearing of this cause, Plaintiff be awarded judgment for damages for lost wages and the value of all employment benefits which he has lost from the date of Defendant's discriminatory action;

c. That the Court issue an injunction requiring Defendant to re-employ Plaintiff at his former positions with all employment rights and benefits to which he would have been entitled, and without harassment or illegal conditions imposed on his job, or, in the alternative, front pay and benefits in lieu of reinstatement;

d. That Plaintiff be awarded additional compensatory damages in the amount of $500,000, including damages for humiliation and embarrassment and emotional distress, as are allowed pursuant to the provisions of T.C.A. §4-21-101, *et seq.* and 29 U.S.C. §623, *et seq*., and liquidated damages under ADEA;

e. That Plaintiff be awarded punitive damages;

f. That Plaintiff be awarded attorney fees and such other and further relief as the Court deems proper pursuant to T.C.A. §4-21-101, *et seq.* and 29 U.S.C. §621, *et seq*.;

g. That Plaintiff be awarded such other and further relief as the Court deems proper; and

h. Plaintiff demands a jury to try all claims and issues triable by a jury.

BURNETTE, DOBSON & PINCHAK

BY: ____*s/ Frank P. Pinchak*____________________

Harry F. Burnette, BPR #004803
Frank P. Pinchak, BPR #02094
Madison Hahn, BPR #037860
711 Cherry Street
Chattanooga, TN 37402
Phone: (423) 266-2121
Fax: (423) 266-3324
fpinchak@bdplawfirm.com
hburnette@bdplawfirm.com
mhahn@bdplawfirm.co